IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Boost Worldwide, Inc.,**                               **Case No.: 2:13-cv-490**

    **Plaintiff**                                          **Judge Graham**

    v.                                                    **Magistrate Judge Kemp**

**Cell Station Wireless, Inc. d/b/a**
**Cell-U-Express,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Motion for Default Judgment (doc. 9) against, the Defendant, Cell Station Wireless, filed on August 1, 2013. For the following reasons, the Court will grant the Plaintiff's motion.

**I.      Background**

The Plaintiff, Boost Worldwide, is a provider of prepaid wireless services. Compl. at ¶ 8, doc. 2. It is owned by Sprint and operates on Sprint's and Nextel's telecommunication networks. Id. Between 2001 and 2006, the Plaintiff trademarked numerous marks and logos (the Boost Marks) used in connection with its telecommunications equipment, telephone cards, and telecommunications services. Id. at ¶¶ 10–13. The Plaintiff has used these Boost Marks in promoting, advertising, offering, and selling its products and services since 2002. Id. at ¶ 14–17. As a result of their continuous use, the Boost Marks are widely recognized in the United States, including Ohio, and are associated with the Plaintiff's goodwill and reputation. Id. at ¶ 18.

The Plaintiff sells its products and services through large retail chains and selectively authorized retail outlets throughout the country. Id. at ¶ 19. The Defendant, Cell Station Wireless, is not an authorized Boost dealer. Compl. at ¶ 20. Nonetheless, the Defendant has improperly used the Boost Mark in signs and other advertising in connection with its Columbus store. Id. at ¶ 21. The Defendant's unauthorized use of the Boost Marks is confusing to the public. Id. at ¶ 23.

Prior to filing the instant action, the Plaintiff, through counsel, contacted the Defendant and requested that it cease the unauthorized use of the Boost Marks. Id. at ¶¶ 24–25. The Defendant continued to use the Boost Marks despite the Plaintiff's request and in violation of the Plaintiff's trademark. Id. at ¶ 25.

On May 21, 2013, the Plaintiff filed a five count Complaint (doc. 2) asserting claims for trademark infringement in violation of 15 U.S.C. § 1125(a), trademark infringement in violation of 15 U.S.C. § 1114, false advertising in violation of 15 U.S.C. § 1125(a)(1)(B), unfair competition, and unjust enrichment. After the Defendant failed to respond to the Summons (doc. 4 & 6), the Plaintiff filed an Application for Entry of Default (doc. 7) on July 8, 2013. The Clerk entered an Entry of Default (doc. 8) against the Defendant on July 10, 2013. On August 1, 2013, the Plaintiff filed a Motion for Default Judgment (doc. 9) against the Defendant. Following the submission of its Motion for Default Judgment, the Plaintiff filed additional documentation in supports of its request for attorney's fees in this case. See doc. 10, 11, & 13. The Plaintiff's Motion is now ripe for the Court's consideration.

**II.    Standard of Review**

Federal Rule of Civil Procedure 55 states, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party against whom default has been entered is deemed to have admitted all of the well-pleaded allegations in the complaint, except those related to damages. Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110–11 (6th Cir. 1995). Allegations concerning damages are not deemed true upon entry of default. "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Vesligaj v. Peterson, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting Credit Lyonnais Sc. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). After default has been entered, the party seeking relief from the defaulting party may apply for a default judgment. Fed. R. Civ. P. 55(b). "When an application is made to the court under Rule 55(b)(2) for the entry of a judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A Wright & Miller Fed. Prac. & Proc. Civ. § 2685 (3d ed. 2013).

**III.    Discussion**

In its Motion for Default Judgment,[1] the Plaintiff requests that the Court enter "an Order granting it default judgment as to all allegations set forth in the Complaint." Mot. for Default. J. 1, doc. 9. The primary focus of the Plaintiff's Complaint is the Defendant's alleged violations of the Lanham Act.

A.    Lanham Act Violation

---

[1] In support of its Motion, the Plaintiff cites Fifth Circuit case law almost exclusively.

A party proves trademark infringement in violation of the Lanham Act by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." Coach, Inc. v. Goodfellow, 717 F.3d 498, 502 (6th Cir. 2013) (citing Leelanau Wine Cellars, Ltd. v. Black & Red, Inc., 502 F.3d 504, 515 (6th Cir. 2007)). Taking the Plaintiff's well-plead allegations as true, see Antoine, 66 F.3d at 110–11, the Plaintiff: (1) owns its trademarks, Compl. at ¶¶ 10–14; (2) the Defendants used the Boost Marks in commerce without authorization, id. at ¶¶ 20–25; and (3) the Defendant's use of the Boost Marks is likely to cause confusion among consumers regarding the origin of the goods offered by the parties, id. at ¶¶ 1, 23, 32, 37, 47. Consequently, the Plaintiff's well-plead complaint demonstrates that the Defendant violated the Lanham Act.

B.  Permanent Injunction

Based on the Defendant's violation of the Lanham Act, the Plaintiff requests that this Court enter a permanent injunction enjoining the Defendant from further infringing conduct. Courts may issue permanent injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of the Lanham Act. 15 U.S.C. § 1116(a). A plaintiff seeking a permanent injunction must demonstrate (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) that considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) it is in the public's interest to issue the injunction. Audi AG v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006) (citing eBay Inc., et al. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). "The

decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." Ebay Inc., 547 U.S. at 391.

The Court finds that a permanent injunction enjoining the Defendant's use of the Boost Marks is appropriate under the circumstances of this case. First, the Plaintiff is likely to suffer irreparable injury if the Defendant is not permanently enjoined from using the Boost Marks. The irreparable injury factor is established in trademark cases by showing that the defendant's use of a trademark is likely to cause confusion. Wynn Oil Co. v. American Way Serv. Corp., 943 F.2d 595, 608 (6th Cir. 1991). The Court has already found that the Defendant's use of the Boost Marks is likely to cause confusion. Therefore, the first factor weighs in favor of a permanent injunction.

Second, there is no adequate remedy at law for the Defendant's infringing conduct. As the Sixth Circuit has explained, there is no adequate remedy at law where there is a potential future harm from infringement. Audi AG, 469 F.3d at 550. The Defendant in this case has ignored the Plaintiff's request to cease the use of the Boost Marks and continued to use the Boost Marks in the regular course of its business. Absent a permanent injunction, there is the potential that the Defendant will continue to use the Boost Marks and likely cause confusion among the public about the origination of its good and services. Therefore, the second factor weighs in favor of a permanent injunction.

Third, the Defendant will not incur any hardship as a result of the issuance of a permanent injunction requiring that it comply with the Lanham Act. A defendant does not suffer any hardship in complying with the Lanham Act. Id.  Therefore, the third factor weighs in favor of a permanent injunction.

Finally, the issuance of a permanent injunction in this case is in the public interest. Trademark enforcement and prevention of customer confusion are inherently in the public interest. Park'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 198 (1985); see also Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc., 453 F.3d 377, 383 (6th Cir. 2006) (recognizing that a permanent injunction in cases involving the Lanham Act serves "two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark"). Therefore, the fourth factor weighs in favor of a permanent injunction. In light of the foregoing analysis, the Court will grant the Plaintiff's request for a permanent injunction.

The Plaintiff also requests that this Court order that the Defendant be required to file a written report detailing its compliance with the permanent injunction. A court may direct a defendant to file such a report under 15 U.S.C. § 1116(a). In this case, the Court finds that such a request is well-taken and will grant the Plaintiff's request.

C.   Damages and Attorney's Fees

Although the Plaintiff's Complaint requested damages for the Defendant's alleged violations of the Lanham Act, Compl. at 10, in its Motion for Default Judgment, the Plaintiff requests only that the Court enter a permanent injunction and award the Plaintiff $3,960.32 in attorney's fees and expenses, Pl.'s Mot. for Default J. 5.[2] Having ruled on the Plaintiff's request for a permanent injunction, the Court turns to the Plaintiff's request for attorney's fees and expenses. Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Thus, the Lanham Act § 1117(a)

---

[2] In its Motion for Default Judgment, the Plaintiff explicitly states that "Boost is not seeking further damages, statutory or otherwise, from defendant. Rather, Boost seeks only a judgment for the fees and expenses it has incurred in connection with prosecuting this Action. Mot. for Default J. at 9 n.1.

yields two inquiries: (1) whether the requesting party was the "prevailing party," and (2) whether the case was "exceptional." See Audi AG v. D'Amato, 469 F.3d 534, 550 (6th Cir.2006).

Here, the Plaintiff is the prevailing party and Sixth Circuit case law supports the conclusion that this is an "exceptional case" entitling the Plaintiff to attorney's fees. Although the Lanham Act does not define what is an "exceptional case," the Sixth Circuit had held that "a case is exceptional where the trademark infringement was "malicious, willful, fraudulent, or deliberate." Coach, Inc., 717 F.3d at 505; Audi AG, 469 F.3d at 550; Eagles, Ltd. v. Am. Eagle Found., 356 F.3d 724, 728 (6th Cir. 2004). The trial court has "considerable discretion" in deciding whether to award attorney's fees under § 1117. Sovereign Order of Saint John of Jerusalem, Inc. v. Grady, 119 F.3d 1236, 1244 (6th Cir. 1997). Doubt over whether the defendant acted with the requisite intent should be resolved in favor of a finding that the case is not exceptional. See Hindu Incense v. Meadows, 692 F.2d 1048, 1052 (6th Cir. 1982) (citing O'Brien Int'l, Inc. v. Mitch, 209 USPQ 212, 221 (N.D.Cal.1980)); see also Schlotzsky's, Ltd. v. Sterling Purchasing and Nat'l Distrib. Co., 520 F.3d 393, 402 (5th Cir. 2008) ("The prevailing party has the burden to demonstrate the exceptional nature of the case by clear and convincing evidence.").

Factors a court may consider in deciding if a case is exceptional include: whether the infringing party attempted to ascertain if his use of the name or mark would infringe on the rights of another; whether the infringing party was given notice of his wrongdoing; whether the infringing party acted in reasonable reliance on the advice of legal counsel; whether the infringing party acted with bad faith, oppression, or coercion; and whether the prevailing party suffered any damages or lost sales. See Audi AG, 469 F.3d at 551; Eagles, 356 F.3d at 728;

Hindu Incense, 692 F.2d at 1051; Timber Prods. Inspection, Inc. v. Coastal Container Corp., 827 F. Supp. 2d 819, 831 (W.D. Mich. 2011).

Here, prior to the filing of the instant action, the Plaintiff provided the Defendant with notice of its legal rights concerning the use of the Boost Marks and requested that the Defendant cease and desist its use of the Boost Marks. Despite this notice, the Defendant continued to use the Boost Marks in the regular course of its business. When the Plaintiff brought the instant action against the Defendant, the Defendant failed to appear and an entry of default was entered against it. Considering these facts, it is reasonable to infer that the Defendant's infringement was willful or deliberate. See PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp. 2d 1213, 1222 (S.D. Fla. 2004) (awarding attorney's fees under the Lanham Act where defendant continued infringement even after receiving notice from the plaintiff and defendant failed to respond to the complaint); Arista Records, Inc. v. Beker Enters., Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (finding willfulness when "Plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiff's communications"); Louis Vuitton Malletier & Oakley v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice"); Discovery Commc'ns, Inc. v. Animal Planet, Inc., 172 F. Supp. 2d 1282, 1291–92 (C.D. Cal. 2001) (awarding attorney's fees under the Lanham Act where defendant continued infringement even after receiving notice from the plaintiff and defendant failed to respond to the complaint); Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd., 175 F.R.D. 658, 663 (S.D. Cal. 1997) (finding that for purposes of award of attorney fees under the Lanham Act, case may be considered "exceptional" where defendant disregards proceedings and does not appear); E. & J. Gallo Winery v. Consorzio del Gallo Nero, 782 F. Supp. 472, 474–76 (N.D. Cal. 1992)

(awarding attorney fees to plaintiff after defendant repeatedly ignored warning to refrain from use of mark). Under the circumstances of this case, the Court finds that this is an exceptional case justifying the award of attorney's fees.

The Court must now determine whether the Plaintiff's request of $3,960.32 in attorney's fees and expenses is reasonable. In support of its request, the Plaintiff submitted: (1) an affidavit from the Plaintiff's national outside counsel, First Youngelson Aff., doc. 9-1; (2) an invoice from national outside counsel's firm to the Plaintiff's parent company for $3,500 in professional fees, Invoice, doc. 11; and (3) an additional affidavit from the Plaintiff's national outside counsel explaining the fee arrangement in this case, Second Youngelson Aff., doc. 13. The fee applicant bears the burden of establishing entitlement to an attorney-fee award and documenting the appropriate hours expended and hourly rates. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); see also Graceland Fruit Inc. v. KIC Chems., Inc., 320 F. App'x 323, 328 (6th Cir. 2008). In addition, the applicant bears the burden of proving that the requested monetary is reasonable. See United States v. Ohio, 474 F. Supp. 2d 916, 920 (S.D. Ohio 2007) (citing Reed v. Rhodes, 179 F.3d 453, 472 (6th Cir. 1999)).

Typically, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. A party requesting attorney's fees must provide documentation with "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 553 (6th Cir. 2008) (quoting United Slate, Local 307 v. G.M. Roofing & Sheet Metal Co., 732 F.2d 495, 502 n. 2. (6th Cir. 1984)). Courts determine a reasonable hourly rate based on the prevailing market

rate in the relevant community for lawyers of comparable skill and experience. Van Horn v. Nationwide Prop. and Cas. Ins. Co., 436 F. App'x 496, 498–99 (6th Cir. 2011) (citing Granzeier v. Middleton, 173 F.3d 568, 577 (6th Cir. 1999). "A district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." Van Horn, 436 F. App'x at 499 (citing B & G Mining, Inc. v. Dir., Office of Workers' Comp. Programs, 522 F.3d 657, 664 (6th Cir. 2008); Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004)).

In this case, as explained by counsel, the Plaintiff and counsel agreed to a $3,500 flat fee arrangement in this case. Second Youngelson Aff. ¶¶ 2–3. Consequently, there is no hourly rate for counsel's work on behalf of the Plaintiff and counsel has not prepared any itemized billing for the Plaintiff in this case. Id. at ¶ 2. The fee was intended to cover:

> efforts to locate, identify and negotiate with defendant regarding potential resolution of the matter, including the preparation of a settlement agreement; preparation and filing of a complaint and supporting papers; preparing and filing of an application for default judgment and supporting papers; supervising and coordinating local counsel and Boost's local investigative team; and local counsel fees.

Id. at ¶ 3. Counsel estimates that he spent eight to ten hours on accomplishing these tasks. Id. at ¶ 4. Counsel's hourly rate for eight to ten hours of work would be $350.00 to $437.50 per hour. Given the straightforward nature of the litigation in this case, the Court does not believe such an hourly rate is reasonable. Based on the Court's knowledge of the local legal market, the Court believes that a reduced hourly rate of $250.00 is reasonable under the circumstances of this case and will award the Plaintiff $2,500.00 in attorney's fees.

In addition, the Court will award the Plaintiff $400.00 in costs. See 15 U.S.C. § 1117(a) (under the Lanham Act, prevailing party "shall be entitled . . . to recover . . . the costs of the

action"). The Plaintiff paid the $400.00 filing fee in this case on May 21, 2013. The Plaintiff has not provided any evidence of additional costs that it is entitled to recover.

**IV.     Conclusion**

For the foregoing reasons, the Court:

(1) **GRANTS** the Plaintiff's Motion for Default Judgment (doc. 9);

(2) **PERMANENTLY ENJOINS** the Defendant from the unauthorized use of the Boost Marks;

(3) **ORDERS** the Defendant to:

>  (A) remove any and all existing signage, advertising, and other materials bearing the Boost Marks;
>
>  (B) cease and desist the use of the Boost Marks on any signage, advertising, and other materials in the future;
>
>  (C) cease the sale of any Boost products; and
>
>  (D) cease the sale of replenishment minutes (Re-Boost minutes) for any Boost products;

(4) **ORDERS** the Defendant to file a written report with the Court detailing its compliance with this Order within 30 days of this Order being issued; and

(5) **AWARDS** the Plaintiff $2,900.00 in attorney's fees and costs.[3]

IT IS SO ORDERED.

> S/ James L  Graham
> James L. Graham
> UNITED STATES DISTRICT JUDGE

Date:   January 7, 2014

---

[3] $2,500.00 in attorney's fees and $400.00 in costs.

11